UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL SULLIVAN,

     Plaintiff,

v.

LG CHEM, LTD. and LG ENERGY
SOLUTION MICHIGAN, INC.,

     Defendants.

Case No. 21-11137

Honorable Laurie J. Michelson

---

## OPINION AND ORDER GRANTING LG CHEM'S
## MOTION TO DISMISS [3]

---

The facts of this case, it turns out, are not unusual. A plaintiff purchases

lithium-ion batteries—allegedly manufactured by LG Chem—in his or her home state

for use in an electronic cigarette. The batteries later explode and cause the plaintiff

serious injuries. The plaintiff sues LG Chem. Cases based on similar facts have been

filed in at least 10 jurisdictions.[1]  Each time, LG Chem, a South Korean corporation,

---

[1] *Walsh v. LG Chem Ltd.*, 834 F. App'x 310 (9th Cir. 2020); *Davis v. LG Chem, Ltd.*, 849 F. App'x 855 (11th Cir. 2021), *cert. denied sub nom. Fullerton v. LG Chem, Ltd.*, 142 S. Ct. 108 (2021); *Durham v. LG Chem, Ltd.*, No. 1:20-CV-01277-SDG, 2021 WL 1573899 (N.D. Ga. Apr. 22, 2021), *appeal dismissed sub nom. Kurtz v. LG Chem, Ltd.*, No. 21-11822-DD, 2021 WL 3849396 (11th Cir. June 30, 2021); *Payrovi v. LG Chem Am., Inc.*, 491 F. Supp. 3d 597 (N.D. Cal. 2020)*; Tieszen v. EBay, Inc. et. al*, No. 4:21-CV-04002-KES, 2021 WL 4134352 (D.S.D. Sept. 10, 2021), *motion to certify appeal granted, reconsideration denied*, No. 4:21-CV-04002-KES, 2022 WL 79820 (D.S.D. Jan. 6, 2022*); Beaton v. LG Chem, Ltd., et al.*, No. 2:20-cv-06806-BRM-ESK, 2021 WL 3828835 (D.N.J Aug. 26, 2021); *Richter v. LG Chem, Ltd.*, No. 18-CV-50360, 2020 WL 5878017 (N.D. Ill. Oct. 2, 2020); *Yamashita v. LG Chem, Ltd.*, No. 20-CV-00129-DKW-RT, 2020 WL 4431666 (D. Haw. July 31, 2020*); Reyes v. Freedom*

has filed a motion to dismiss for lack of personal jurisdiction, arguing that it lacks the necessary contacts with each state to satisfy the forum's long-arm statute and the Due Process Clause of the Fourteenth Amendment. In all but two of these cases, LG Chem has been successful. *See Berven v. LG Chem, Ltd.*, No. 118CV01542DADEPG, 2019 WL 4687080 (E.D. Cal. Sept. 26, 2019); *Tieszen v. EBay, Inc. et. al*, No. 4:21-CV-04002-KES, 2021 WL 4134352 (D.S.D. Sept. 10, 2021).

But two things make this case unusual. First, with the benefit of jurisdictional discovery, Sullivan provided the Court with specific facts about LG Chem's activities in Michigan, including direct shipments of LG 18650 batteries to Michigan as well as two contracts with Michigan entities for 18650 batteries. Second, the Supreme Court's most recent opinion on specific personal jurisdiction clarified that "some relationships [between a defendant and a forum] will support jurisdiction without a causal showing," at least where the defendant serves a market in a state for the very product that injured the plaintiff. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026–28 (2021). With these benefits, the Court concludes that LG Chem's contacts with Michigan satisfy the requirements of the Due Process Clause, at least at the motion-to-dismiss stage. However, in this Court's view,

---

*Smokes, Inc.*, No. 5:19-CV-2695, 2020 WL 1677480 (N.D. Ohio Apr. 6, 2020); *Berven v. LG Chem, Ltd.*, No. 118CV01542DADEPG, 2019 WL 1746083 (E.D. Cal. Apr. 18, 2019), *report and recommendation adopted*, No. 118CV01542DADEPG, 2019 WL 4687080 (E.D. Cal. Sept. 26, 2019); *Death v. Mabry*, No. C18-5444 RBL, 2018 WL 6571148 (W.D. Wash. Dec. 13, 2018); *Eriksen v. ECX, LLC. et al.*, No. 79473-I, 2020 WL 6395534 (Ct. App. Wash. Nov. 2, 2020); *State ex rel. LG Chem, Ltd. v. McLaughlin*, 599 S.W.3d 899, 901 (Mo. 2020); *Kadow v. LG Chem, et al.*, No. B309854, 2021 WL 5935657 (Cal. Ct. App., 2nd Dist. Dec. 16, 2021); *see also Rich v. LG Chem, Ltd., et al.*, No. 20-014758-NO (Mich. Cir. Ct. Nov. 30, 2021) (ECF No. 21-7).

Michigan's long-arm statute might offer additional protection to LG Chem. Yet Sullivan treats Michigan's long-arm statute as if it has the same scope as the Due Process Clause. Because Sullivan has not shown that his cause of action "ar[ose] out of" LG Chem's contacts with Michigan as that phrase is used in the long-arm statute, this Court dismisses the case for want of personal jurisdiction.

## I. Background

As discussed at length below, when deciding a 12(b)(2) motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the Court takes the pleadings and affidavits in the light most favorable to the plaintiff, in this case Sullivan. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).

### A. Factual Background

In March 2018, Michael Sullivan's wife purchased an electronic cigarette and four LG HG2 18650 lithium-ion batteries from a local Michigan smoke shop. (ECF No. 1-1, PageID.22.) About seven months later, Sullivan had two of the LG 18650 batteries in his front, left pants pocket when they suddenly exploded. (*Id.*) The explosion caused flames and sparks to "shoot out of his pocket," and Sullivan immediately tried to put out the fire with his hand. (*Id.*) But before it could be extinguished, the flames caused "severe second- and third-degree burns to his left hand and left upper thigh." (ECF No. 1-1, PageID.23.) He was soon transferred to a burn unit, where he underwent debridement treatments to remove the burned skin and received skin graft surgery. (ECF No. 10, PageID.337.)

## B. Procedural Background

On December 22, 2020, Sullivan filed a complaint in Genesee County Circuit Court against defendants LG Chem and LG Chem's Michigan-based subsidiary, LG Energy Solutions Michigan (LGESMI). (ECF No. 1-1, PageID.24.) He asserted claims for negligence and gross negligence against both parties. (*Id.* at PageID.24–27.)

LG Chem then removed this action to federal court based on diversity of citizenship, alleging that LGESMI had been fraudulently joined. (ECF No. 3-4, PageID.291.) Sullivan acknowledged this argument, but neither asked this court to remand the case nor contested that LGESMI had been fraudulently joined, so he appears to have waived his claims against LGESMI. *See* (ECF No. 10, PageID.340); *Kennedy v. Comm'r of Soc. Sec.,* 87 Fed.Appx. 464, 466 (6th Cir.2003) ("[I]ssues which are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks omitted)). So LGESMI is dismissed.

In time—and in keeping with similar cases—LG Chem filed a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (ECF. No. 3, Page.ID.235.) Sullivan opposed the motion, conceding that LG Chem is a South Korean corporation, but arguing that LG Chem has "significant contacts with the state of Michigan relating to its lithium-ion battery business." (ECF No. 10, PageID.338; ECF No. 3-2, PageID.268.) He also requested oral argument or jurisdictional discovery. (ECF No. 10, Page.ID.328.)

The Court held a hearing on the motion and granted Sullivan "limited written jurisdictional discovery on the issue of LG Chem's contacts with Michigan related to the 18650 batteries." (ECF No. 18; ECF No. 20, PageID.708); *see also Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 506 (6th Cir. 2020) (explaining that a consumer in a products liability case may need discovery to reveal whether the defendant is amenable to suit). Discovery has since concluded, and the parties have submitted their supplemental briefs. (*See* ECF Nos. 21, 25.) Sullivan has not asked for further discovery or for an evidentiary hearing, though he did request a second round of oral argument. (*See* ECF No. 25.) But given the extensive briefing and record, the Court considers the motion without additional oral argument. *See* E.D. Mich. LR 7.1(f). For the reasons below, the Court finds that it lacks general and specific personal jurisdiction over LG Chem and DISMISSES this case.

## II. Legal Standard

"The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012). But the plaintiff's burden varies depending on the district court's response to the motion to dismiss, as the court may (1) decide the motion on the basis of written submissions and affidavits alone, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

The Court here selected the second option and permitted Sullivan to take limited jurisdictional discovery. Because there is a factual dispute about precisely

how many shipments of 18650 batteries LG Chem sent to Michigan, the burden of proof on Sullivan is the *prima facie* standard. *See Schneider*, 669 F.3d at 697 (discussing potential "exception" to the normal *prima facie* standard where there is neither a factual dispute nor a dispute as to the extent of discovery); *see also Lyngaas v. Curaden AG*, No. 17-CV-10910, 2018 WL 1251754, at *2 (E.D. Mich. Mar. 12, 2018) (discussing standard and collecting cases).

A *prima facie* showing of the court's personal jurisdiction requires that the plaintiff establish "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In response to a motion to dismiss, "the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). The pleadings and affidavits submitted on a 12(b)(2) motion are "received in a light most favorable to the plaintiff[,] . . . [and] the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). But the Court is not precluded from considering the undisputed factual representations of the defendant that are consistent with the plaintiff's representations. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997). As another court in this circuit succinctly summarized: "The upshot seems to be this: in opposing a motion to dismiss for lack of personal jurisdiction, a plaintiff cannot rely on mere allegations in the

6

complaint, unless they are uncontroverted by the defendant-movant—in which case they can be accepted as true, as can the averments in the plaintiff's declarations (even if contradicted) and the defendant's undisputed factual assertions." *Shelter Mut. Ins. Co. v. Bissell Homecare, Inc.*, No. 3:20-CV-00813, 2021 WL 1663585, at *3 (M.D. Tenn. Apr. 28, 2021). And "[d]ismissal [at the 12(b)(2) stage] is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citing *Theunissen*, 935 F.2d at 1458).

Having laid out the standard, the Court also finds it helpful to highlight Sullivan's specific jurisdictional allegations.

Sullivan's response to the motion to dismiss references the following from its complaint: (1) LG Chem's filings in a patent infringement case that state that LG Chem, through its subsidiaries in Michigan, "has invested hundreds of millions of dollars and employs hundreds of people in the United States, primarily in Michigan, who are dedicated to the design, . . . manufacturing, testing, . . . and customer care of its lithium-ion batteries" (ECF No. 10-3, PageID.375); (2) a deposition from a different case where an LG Chem representative explained that LG Chem sells 18650 batteries to major manufacturers, which are in turn incorporated into power tools, which are in turn sold in the state of Michigan (ECF No. 10-4, PageID.399, 411); and (3) a document allegedly showing that LG Chem imported three orders of lithium-ion batteries (maybe or maybe not 18650s) to its subsidiaries in Michigan (ECF No. 10-6). (*See generally* ECF No. 10, PageID.338–40.)

7

With the benefit of jurisdictional discovery, Sullivan now adds the following in support of establishing personal jurisdiction: (4) one verified shipment of 100 LG 18650 battery cells to a Michigan-based vacuum-cleaner manufacturer (ECF No. 21-4, PageID.808; ECF No. 21, PageID.718); (5) an unknown quantity of shipments of 18650 batteries to an LG Chem subsidiary in Michigan for "research and development purposes" (ECF No. 21, PageID.720); and (6) two supplier agreements with Michigan companies for 18650 batteries, one with the vacuum-cleaner manufacturer mentioned above and one with a Michigan-based automotive supplier which resulted in many shipments of 18650 batteries to a different state (ECF No. 21-4, PageID.808–809). (*See generally* ECF No. 21, PageID.717–720; ECF No. 25, PageID.955–957.)

### III. Personal Jurisdiction

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Malone*, 965 F.3d at 502 (citing *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997)). Personal jurisdiction comes in two forms: general and specific. *See generally Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 –25 (2021). General jurisdiction is proper when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (quoting *Third Nat'l*

*Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). Specific jurisdiction, on the other hand, is proper only when "claims in the case arise from or are related to the defendant's contacts with the forum state." *Id.* Here, Sullivan has failed to make a case for either form of personal jurisdiction.

### A. General Jurisdiction

It is not entirely clear if Sullivan is attempting to argue that LG Chem is subject to general personal jurisdiction in Michigan. But because Sullivan cites and briefly discusses Michigan's general jurisdiction long-arm statute for corporations, the Court will address this argument anyway. *See* (ECF No. 10, PageID.342, 344); Mich. Comp. Laws § 600.711. And because the parties focus on the constitutional requirements of general jurisdiction, the Court starts (and ends) its analysis there.

With respect to a corporation, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction" under the Due Process Clause. *Daimler AG v. Bauman*, 571 U.S. 117, 133, 137 (2014) (internal quotation omitted). But in an "exceptional case," a corporation's affiliations with a forum state might be so extensive as to render it "at home" somewhere other than its place of incorporation or principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler*, 571 U.S. at 129 n.19).

Assuming Sullivan is arguing for general personal jurisdiction, he has not satisfied this burden. First, he acknowledges that LG Chem is a South Korean company with its principal place of business in South Korea. (ECF No. 3-2, PageID.268; ECF No. 10, PageID.342, 344.) But he suggests that LG Chem is subject

to general jurisdiction because "LG Chem has bragged about its lithium-ion business in Michigan for years. . . [and] has invested 'hundreds of millions of dollars and employs hundreds of people in the United States, primarily in Michigan.'" (ECF No. 10, PageID.344 (quoting patent case filed by LG Chem in the Eastern District of Michigan (ECF No. 10-3)).)

But that is not enough for general personal jurisdiction. First, the language Sullivan quoted above clearly references the activities of LG Chem's Michigan-based subsidiaries when read in the context of that patent suit.[2] (*See* ECF No. 10-3, PageID.375.) And "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities" for purposes of personal jurisdiction. *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850 (6th Cir. 2017) (quoting *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995)). Sullivan makes no argument that LG Chem has abused its corporate form or that the Michigan subsidiaries are a mere alter ego of LG Chem. (*See* ECF Nos. 10, 25.) Second, even assuming the facts above were true of LG Chem itself, this would not be enough for

---

[2] The paragraph reads in full: "LGC has extensive involvement in the U.S. market, particularly in the State of Michigan, with its innovative battery technology. LGC supplies, through its plants in Michigan, millions of battery cells to U.S. companies like General Motors, and Chrysler. For example, LGC's subsidiary LG Chem Power Inc. ("LGCPI") has operated a facility in Troy, Michigan since 2005. LGCPI has invested millions of dollars in the Troy facility and employs more than 150 people. Moreover, LGC's subsidiary LG Chem Michigan Inc. ("LGCMI") has operated a facility in Holland, Michigan since 2010. LGCMI has invested hundreds of millions of dollars in the Holland facility and employs more than 450 people. In sum, LGC has invested hundreds of millions of dollars and employs hundreds of people in the United States, primarily in Michigan, who are dedicated to the design, research, development, manufacturing, testing, quality control, and customer care of its lithium-ion batteries for its U.S. customers." (*See* ECF No. 10-3, PageID.376.)

general jurisdiction. Indeed, that is almost the exact argument that the Supreme Court rejected in *Daimler*: "Plaintiffs would have us . . . approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' . . . That formulation, we hold, is unacceptably grasping." *See* 571 U.S. 137–38.

In sum, because LG Chem is not incorporated in and does not have its principal place of business in Michigan—and because it is not otherwise "at home" in Michigan—LG Chem is not subject to general personal jurisdiction here. *See Daimler*, 571 U.S. at 129 n.19. Because Sullivan has not satisfied the due process requirements, the Court need not consider the state's long-arm statute for general personal jurisdiction.

## B. Specific Jurisdiction

That leaves specific jurisdiction. As explained, "[f]or specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012). Because the parties focus their arguments on constitutional due process, the Court will, once again, begin there.

### 1. Due Process

"The Fourteenth Amendment's Due Process Clause limits a . . . court's power to exercise jurisdiction over a defendant." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). As the Supreme Court has explained, the nonresident defendant must have sufficient minimum contacts with the forum state

such that the maintenance of the suit is "reasonable . . . [and] does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington*, 326 U. S. 310, 316 (1945)).

In the Sixth Circuit, courts apply a three-part test to decide whether the exercise of personal jurisdiction is consistent with due process. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). Part one asks whether the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state or caus[ed] a consequence in the forum state." *Id.* Part two looks to whether the suit arises from or relates to the defendant's activities in the forum. *Id.*; *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). And part three assesses whether the defendants' actions and their consequences "have a substantial enough connection" with Michigan to "make the exercise of jurisdiction over the defendant[s] reasonable." *Brewington*, 836 F.3d at 550.

At step one, the Court considers whether LG Chem purposefully availed itself of the privilege of acting in Michigan. Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)). Indeed, neither the unilateral activity of a third party nor the "mere injury" of someone in the forum state can satisfy the requirements of purposeful availment. *Walden v. Fiore*, 571 U.S. 277, 290 (2014); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Instead, the defendant must "reach out beyond one state and create

12

continuing relationships and obligations with citizens of another state." *See Burger King*, 471 U.S. at 473. And the defendant's actions must "connect[] him to the forum in a meaningful way." *See id.* In other words, courts must determine whether the defendant has "invoked the benefits and protections" of the forum state's law, which carries with it the reciprocal obligation of "submitting to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 476 (quoting *Hanson*, 357 U.S. at 243). And the Court can consider LG Chem's contacts with Michigan in the aggregate. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("Because Patterson deliberately did both of those things [signing a contract and injecting his product into the stream of commerce] . . . we believe that ample contacts exist to support the assertion of jurisdiction in this case.").

Under this standard, some of Sullivan's allegations do little, if anything, to establish specific personal jurisdiction. First, as explained above, Sullivan's allegations about LG Chem's alleged business activities and employees in Michigan only apply to its subsidiaries. Because the subsidiaries are distinct legal entities for purposes of personal jurisdiction, their activities are not attributable to LG Chem absent some showing of abuse of the corporate form, which Sullivan has not made. *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 850 (6th Cir. 2017) (quoting *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995)). Second, the fact that some of LG Chem's 18650 batteries were incorporated into power tools which different companies then sold in Michigan is just the sort of "unilateral activity of another party" that is insufficient to show that LG Chem purposefully availed itself of Michigan. *See World-*

13

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980). So neither of those jurisdictional allegations are attributable to LG Chem.

However, other evidence does show that LG Chem has purposefully availed itself of the benefits and protections of Michigan law. First, the Court considers various shipments of 18650 batteries from LG Chem directly to the state of Michigan. First, there is one undisputed shipment of 18650 batteries to a Michigan-based vacuum-cleaner manufacturer. (ECF No. 21-4, PageID.808.) And Sullivan submitted a document with import data showing that LG Chem sent three shipments of "lithium-ion batteries" to its Michigan subsidiaries. (ECF No. 10, PageID.340; ECF No. 10-6.) But LG Chem submitted an affidavit showing that only one such shipment—which contained over 50,000 pounds of batteries—was for 18650s, while the other two contained "lithium-ion pouch-type [battery] cells." (ECF No. 17-2, PageID.544–545; ECF No. 10-6.) Because Sullivan never disputed this affidavit and because it is consistent with his statement about shipments of "lithium-ion batteries," the Court considers only that one 50,000-pound shipment of 18650 batteries to a subsidiary. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997) ("But *Theunissen* [*v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)] does not require a court to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff.") So that makes two undisputed shipments of 18650s to Michigan.

And there could be more. LG Chem admits in its supplemental brief that it sent an unspecified number of 18650 batteries to a subsidiary in Michigan for

14

"research and development purposes." (ECF No. 21, PageID.720.) And LG Chem says that these shipments were "not the topic of any jurisdictional discovery requests." (ECF No. 21, PageID.720.) Sullivan protests. (ECF No. 25, PageID.957). He says that LG Chem "unilateral[ly]" limited its responses to only those shipments related to "manufacturing and distribution" (versus shipments for "research and development"), when he had requested documents relating to "all" shipments of 18650 batteries to Michigan. (*Id*.) Indeed, the Court allowed discovery "on the issue of LG Chem's contacts with Michigan related to the 18650 batteries." (ECF No. 20, PageID.708.) And, says Sullivan, he now has "no way of knowing how many more batteries were shipped to Michigan during any relevant time period." (*Id*.) While the Court agrees that LG Chem was less than fully forthcoming, it suffices at this stage to conclude that at least two (and perhaps many more than two) shipments of 18650 batteries were sent directly to known entities in Michigan between 2016 and 2020, one of which contained about 25 tons of those batteries.

Additionally, the Court considers two supplier agreements that LG Chem executed with Michigan companies relating to 18650 batteries. The first is with the vacuum-cleaner manufacturer who received the shipment mentioned above. (ECF No. 21, PageID.720.) The second is with a "manufacturer of products for automakers." (*Id*.) The contract says it "shall be considered as a contract made and to be performed in the State of Michigan" and has a Michigan forum-selection clause. That contract resulted in many shipments of 18650 batteries, worth several million dollars, but those batteries were not shipped to Michigan. (ECF No. 25, PageID.956.)

Even excluding the facts about the subsidiaries and the incorporation of 18650 batteries into power tools that were eventually sold in Michigan, the facts of this case satisfy the "purposeful availment" requirement of prong one for several reasons. First, LG Chem "reached out" to Michigan when it shipped at least two (and perhaps many more than two) shipments of 18650 batteries to known Michigan entities. *See Burger King*, 471 U.S. at 473. And the Court notes that it does not rely on a stream of commerce theory in this analysis; instead, these shipments were sent directly by LG Chem to Michigan entities that LG Chem had on-going relationships with. *Compare Starbrite Distrib., Inc. v. Excelda Mfg. Co.*, 562 N.W.2d 640, 644 (Mich. 1997) ("P.D. George did not merely place its product into the stream of commerce, not having further knowledge regarding where that product might end up. Rather, P.D. George purposefully directed its product to a Michigan corporation, which is qualitatively different[.]"), *with Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 112 (1987) (plurality) ("The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State."). In sum, these shipments are more than "random, fortuitous, or attenuated contacts" with the state. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891–92 (6th Cir. 2002) (citing *Burger King*, 471 U.S. at 475).

Moreover, while in some cases a contract with an in-state entity does not by itself establish purposeful availment, LG Chem has done much more than that. *See Burger King,* 471 U.S. at 473. Again, LG Chem "reached out" and executed contracts

16

with two Michigan-based entities for 18650 batteries. *See id.* In the case of the automotive supplier, the contract contained a Michigan forum-selection clause and resulted in over a dozen shipments of 18650 batteries worth several million dollars in the four-year discovery period. *See id.* ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum."); *see also AlixPartners, LLP v. Brewington*, 836 F.3d 543, 550 (6th Cir. 2016). In other words, LG Chem "did not engage in a one-time transaction, but in a continuing business relationship that lasted a period of many years." *See Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007). And LG Chem "reached out beyond [South Korea's] borders to conduct business with a company whose principal place of business it knew to be in Michigan. Such contacts are not 'random,' 'fortuitous,' or 'attenuated,' but are the result of deliberate conduct that amounts to purposeful availment." *See id.*

In sum, "viewing the cumulative facts in [Sullivan's] favor, this Court concludes that [Sullivan] has adduced evidence sufficient to support a *prima facie* finding of purposeful availment." *See Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 484 (6th Cir. 2003).

At step two, the Court considers whether LG Chem's contacts with Michigan "relate[] to the operative facts of this controversy." *See MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 903 (6th Cir. 2017). Even before the Supreme Court's most

recent opinion on this matter, the Sixth Circuit was clear that "the cause of action need not 'formally' arise from defendant's contacts." *Air Prod.*, 503 F.3d at 553 (quoting *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002)). Instead, this has been a "lenient standard" that can be satisfied when the cause of action is "at least marginally related to the alleged contacts" between the defendant and the forum. *Bird*, 289 F.3d at 875; *see also Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (applying "lenient" standard).

And, as Sullivan suggests, the Supreme Court's most recent decision on personal jurisdiction supports this reading of "relates to." (ECF No. 10, PageID.345); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). In *Ford*, the Supreme Court explained that "our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (emphasis in original). It continued: "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing. That does not mean anything goes. . . . But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.,* proof that the plaintiff 's claim came about because of the defendant's in-state conduct." *Id.* (internal citations omitted). Applying this standard, the Court concluded that Ford was subject to specific jurisdiction in Montana and Minnesota because it extensively marketed the same models of car that injured the plaintiffs in the forum states, even if it did not sell the specific cars that injured the plaintiffs there. *Id.* Instead, the Court found that such marketing created

18

a "strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.* at 1028. (quoting *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984)).

While Justices Alito and Gorsuch noted in separate concurrences that this new articulation of "arise from or relate to" is not clearly defined, *see id.* at 1033, 1035, the Court is satisfied that Sullivan has met it here. As Sullivan put it, "[t]he lawsuit alleges that a Michigan plaintiff was injured in Michigan by a LG Chem 18650 lithium-ion battery that was purchased in Michigan during the time that LG Chem was shipping 18650 lithium-ion batteries to its Michigan customers and entering into contracts with Michigan companies for the purchase of 18650 lithium-ion batteries." (ECF No. 25, PageID.961.) The Court agrees. So under both *Ford* and the Sixth Circuit's pre-*Ford* standard, this cause of action "relates to" LG Chem's contacts with Michigan because LG Chem served a market for the very product that the plaintiff alleges malfunctioned and injured him here, thus creating the necessary relationship between the forum, the defendant, and the litigation. *See id.* at 1028.

Resisting this conclusion, LG Chem makes three arguments. First, it repeatedly attempts to define the product and the market very narrowly. For example, it says that it "did not supply 18650 lithium-ion cells to a consumer vaping market in Michigan" and "did not serve a consumer market in Michigan for standalone, replaceable lithium-ion batteries." (ECF No. 21, PageID.717, 718.) But LG Chem provides no authority for these narrow definitions of the product or market. *Cf. Ford*, 141 S. Ct. at 1028 (considering the product at issue to be the Ford Explorer

19

and the Crown Victoria); *Berven v. LG Chem, Ltd.*, No. 118CV01542DADEPG, 2019 WL 1746083, at *10 (E.D. Cal. Apr. 18, 2019) ("[T]he Court finds that the 'product' at issue is the battery, i.e., a cylindrical battery manufactured by LG Chem—the LG 18650 lithium-ion battery."); *see also Murphy v. Viad Corp.*, No. 21-10897, 2021 WL 4504229, at *5 (E.D. Mich. Oct. 1, 2021) (finding no personal jurisdiction over defendant under *Ford* where product that exposed plaintiff to asbestos was never sold in Michigan, but another asbestos-containing product made by defendant was). And if LG Chem wishes to argue that its batteries were misused, that is a defense to liability, not a defense to personal jurisdiction. *See, e.g.,* Mich. Comp. Laws § 600.2947 ("A manufacturer or seller is not liable in a product liability action for harm caused by misuse of a product unless the misuse was reasonably foreseeable."); *see also Tieszen v. EBay, Inc.*, No. 4:21-CV-04002-KES, 2021 WL 4134352, at *6 (D.S.D. Sept. 10, 2021) (considering substantially the same argument and concluding that LG Chem's argument "is relevant to liability, not specific jurisdiction.").

Second, LG Chem says "the greater weight of authority among other courts to consider similar issues supports dismissal of LG Chem from this action." (ECF No. 21, PageID.724.) The Court agrees that LG Chem has generally been successful in proving that it is not subject to personal jurisdiction in various forums across the country. But it does not follow that LG Chem will also be successful in Michigan. As a sister court aptly explained: "This argument is unavailing because it is possible, indeed quite likely, that LG Chem has purposefully availed itself to the privileges of conducting business in some states (where it would be subject to personal jurisdiction)

20

but not others (where personal jurisdiction would be lacking)." *Reyes v. Freedom Smokes, Inc.*, No. 5:19-CV-2695, 2020 WL 1677480, at \*5 (N.D. Ohio Apr. 6, 2020). And the Court notes that many of those cases pre-dated the Supreme Court's decision in *Ford*. *Compare Ford,* 141 S. Ct. at 1034 (Gorsuch, J., concurring) ("Typically, courts have read this second phrase ["relates to"] as a unit requiring at least a but-for causal link between the defendant's local activities and the plaintiff's injuries. . . . Now, though, the Court pivots away from this understanding."), *with Walsh v. LG Chem Ltd.*, 834 F. App'x 310, 312 (9th Cir. 2020) ("Finally, even had Mr. Walsh established minimum contacts between LG Chem and Arizona, he fails to demonstrate that he would not have sustained his injuries but for LG Chem's forum-related activities."). Further, the courts that have dismissed LG Chem did not have before them evidence of the shipments of the 18650 batteries to forum entities and the contracts for the 18650 batteries with forum companies.

Third, LG Chem argues that the Supreme Court's decision in *Bristol-Myers* forecloses jurisdiction here. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017); (ECF No. 3, PageID.257). But the Supreme Court rejected a similar argument in *Ford*: "the plaintiffs [in *Bristol-Myers*] were engaged in forum-shopping—suing in California because it was thought plaintiff-friendly, even though their cases had no tie to the State. . . . That is not at all true of the cases before us." *See id.* It continued: "But here, the plaintiffs are residents of the forum States. They used the allegedly defective products in the forum States. And they suffered injuries when those products malfunctioned in the forum States." *See*

21

*id.* That is just as true here; the plaintiff "brought suit in the most natural State—based on an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that t[ook] place' there." *See id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780).

So Sullivan has made a *prima facie* case that his injury, caused by an 18650 battery, "relate[s] to" LG Chem's shipments of and contracts for 18650 batteries in the state.

At step three, the Court considers whether exercising personal jurisdiction over LG Chem would be fair, "i.e., whether it would comport with traditional notions of fair play and substantial justice." *CompuServe*, 89 F.3d at 1267–68. The Court considers several factors at this stage: (1) "the plaintiff's interest in obtaining relief"; (2) "the interests of the forum State"; and (3) "the burden on the defendant." *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014). And the Court must give "special weight to the 'unique burdens placed upon one who must defend oneself in a foreign legal system.'" *Lyngaas*, 992 F.3d at 423 (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991)).

The Court finds that the exercise of jurisdiction here would be reasonable. First, Sullivan has a strong interest in obtaining relief for his injuries from the party that he claims is responsible. And Michigan has a strong interest in providing a forum for its residents who are injured in Michigan from products purchased in Michigan. And while LG Chem is a foreign defendant, the Court finds that the burden of litigating in Michigan is minimal because LG Chem is already involved in substantial

litigation in the United States, it has signed contracts with Michigan forum-selection clauses, and it has voluntarily litigated patent cases here in the past. (ECF No. 10-3 (patent case filed by LG Chem in the Eastern District of Michigan)); *cf. Lyngaas*, 992 F.3d at 423 (finding exercise of jurisdiction reasonable despite defendant having "no prior contact with the U.S. federal-court system"). Further, when, as here, the first two prongs of the specific personal jurisdiction test are met, then an inference arises that this third factor is also met. *Lyngaas v. Ag*, 992 F.3d 412, 423 (6th Cir. 2021).

So the Court finds that the exercise of personal jurisdiction over LG Chem comports with due process. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (finding *prima facie* standard satisfied despite "the complaint [being] sparse on detail"). But that is not the end of the inquiry. "[A]t least in Michigan, if a court concludes that due process *is* met, the court must also separately consider whether the long-arm statute is satisfied. In some cases . . . a court's exercise of jurisdiction over the defendant would be improper because the conduct giving rise to the action does not meet the requirements of Michigan's long-arm statute." *King v. Ridenour*, 749 F. Supp. 2d 648, 652 n.4 (E.D. Mich. 2010).

## 2. Michigan's Long Arm Statute

Michigan's long-arm statute extends to claims against corporations "arising out of an act which creates" one of several "relationships." These include "the transaction of any business within the state" and "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." *See* Mich. Comp. Laws § 600.715.

Some Courts, including the Sixth Circuit, have suggested that Michigan's long-arm statute is co-extensive with the Due Process Clause. *See, e.g., MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Children's Legal Servs., PLLC v. Shor Levin & Derita, PC*, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012); *Comm'r of Ins. v. Arcilio*, 561 N.W.2d 412, 421 (Mich. Ct. App. 1997). And in the run of cases, the two inquiries do frequently rise and fall together.

But a closer inspection of the Michigan Supreme Court's opinions reveals that that is not always the case. *See also Lyngaas v. Curaden AG*, No. 17-CV-10910, 2018 WL 1251754, at *4 (E.D. Mich. Mar. 12, 2018); *King*, 749 F. Supp. 2d at 652 n.4. Indeed, the Michigan Supreme Court acknowledged that many courts' misunderstanding of the long-arm statute can be traced to *Sifers v. Horen*, 188 N.W.2d 623 (Mich. 1971). *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). But, the Court explained, *Sifers* did not say that the long-arm statute was coextensive with due process, but that "if a defendant's actions or status fit within a provision of a long-arm statute, jurisdiction may be extended as far as due process permits." *Id.* Otherwise, it concluded, the specific categories that the legislature enumerated in the long-arm statute "would be superfluous." *Id.* at 817. Indeed, the Court specifically stated that "there may be instances where a state court will lack the power to exercise personal jurisdiction over a defendant, even though jurisdiction may be constitutionally permissible." *Id.* at 815 (citing *Mallory v. Conida Warehouses*, N.W.2d 597 (Mich. Ct. App. 1982) (finding Idaho was not subject to personal

24

jurisdiction in Michigan because none of the enumerated categories in the long-arm statute contemplated suits against states)).

Perhaps seizing on this, LG Chem argues that Sullivan has not satisfied the long-arm statute. Specifically, it says that "plaintiff's actions do not 'aris[e] out of' the defendant's contacts with Michigan." (ECF No. 3, PageID.249–250; ECF No. 17, PageID.530.) But Sullivan does not explain how the specific jurisdiction long-arm statute for corporations is satisfied despite LG Chem citing the correct statute in its motion to dismiss. (ECF No. 10, PageID.342, 344 (analyzing only general jurisdiction statute for corporations); ECF No. 25 (not mentioning long-arm analysis).). Nor does he address LG Chem's argument that this case does not "arise from" its contacts with the state under the statute. (*See* ECF Nos. 10, 24.)

Instead, Sullivan's only arguments that this action "aris[es] out of" LG Chem's contacts with the forum are made under the Due Process Clause. (ECF No. 10, PageID.347; ECF No. 25, PageID.960–961.) But it is not clear that the standard is the same under the Due Process Clause and the long-arm statute. Indeed, Michigan's long-arm statute uses the phrase "aris[e] from," but not "relate[s] to." *See* Mich. Comp. Laws § 600.715.

And, as explained, *Ford* instructs that "arise from" and "relate to" (at least for purposes of the Due Process Clause) mean different things in the context of personal jurisdiction. "Arise from," the Court explained, "asks about causation," while "relates to" "contemplates that some relationships will support jurisdiction without a causal showing." 141 S. Ct. 1017, 1026 (2021); *see also Durham v. LG Chem, Ltd.*, No. 1:20-

25

CV-01277-SDG, 2021 WL 1573899, at *3 (N.D. Ga. Apr. 22, 2021) (rejecting personal jurisdiction in exploding battery case under long-arm statute that used the phrase "arising out of" but not "relates to"); *Rich v. LG Chem, Ltd.*, No. 20-014758-NO (Mich. Cir. Ct. Nov. 30, 2021) ("This court does not have jurisdiction over defendants under . . . the [long-arm] statute. . . . The cause of action does not arise out of the LG Chem's sale or sending the batteries to its subsidiary located in Michigan." (ECF No. 21-7, PageID.839)). And some authority suggests that "arising from" in the Michigan long-arm statute means something more than "relates to." *See Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010) ("Michigan's long-arm statute extends limited personal jurisdiction over a non-resident if the claim 'aris[es] out of an act which creates [certain] relationships,' . . . The 'arising from' requirement is met if the cause of action was 'made possible' by or 'lies in the wake of' the defendant's contacts with the forum state." (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988))).

In any case, the Court need not determine whether Sullivan's claim arises out of LG Chem's activities in Michigan for the purposes of the Michigan long-arm statute. It suffices to say that Sullivan has made no arguments that it does, and so he has not borne even the *prima facie* burden of proving specific jurisdiction over LG Chem. *See Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020).

## IV. Conclusion

Accordingly, Sullivan has failed to show that both the due process clause and Michigan's long-arm statute have been satisfied as to either specific or general

personal jurisdiction. So LG Chem's motion to dismiss for lack of personal jurisdiction (ECF. No. 3) is GRANTED. A separate judgment will follow.

SO ORDERED.

Dated: February 14, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE